**ROUNSAVILLE OF LOUISVILLE, INC., (WLOU), Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**WEZY, Inc., Intervenor.**

**No. 17152.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 5, 1963.

Decided Feb. 21, 1963.

Mr. Vincent A. Pepper, Washington, D. C., with whom Mr. Robert F. Corazzini was on the brief, for appellant.

Mr. Daniel R. Ohlbaum, Assoc. Gen. Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, and Alan D. Reffkin, Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Messrs. Arthur H. Schroeder, John B. Kenkel and John P. Bankson, Jr., Washington, D. C., were on the brief, for intervenor.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Rounsaville of Louisville, Inc., is licensee of WLOU, a Class III-A standard broadcast station at Louisville, Kentucky, operating daytime only on 1350 kilocycles. On September 23, 1959, it applied to the Federal Communications Commission for authority to operate on the same frequency at night with a directional antenna. The Commission, on August 3, 1961, found the applicant fully qualified to operate as it proposed, but directed a hearing

"1. To determine the areas and populations which may be expected to gain or lose primary service from the proposed operation of Station WLOU and the availability of other

primary service to such areas and populations.

"2. To determine whether the instant proposal would cause objectionable nighttime interference to Station WEZY, Cocoa, Florida, or any other existing standard broadcast stations, and, if so, the nature and extent thereof, the areas and populations affected thereby, and the availability of other primary service to such areas and populations.

"3. To determine, in the light of the evidence adduced pursuant to the foregoing issues, whether a grant of the instant application would serve the public interest, convenience and necessity."

After a hearing the examiner filed an initial decision December 12, 1961. He pointed out that the proposal would provide Louisville with a sixth nighttime station. He concluded "that the addition of a new and powerful skywave interfering signal * * * from Station WLOU will increase the amount of objectionable interference now suffered by Station WEZY and will deprive areas and populations of the only primary nighttime service now available."

The examiner also found that appellant's proposed operation would produce a nighttime "white area" (without primary service) where WEZY's night signal is now heard, contrary to its policy "which seeks to provide some service of satisfactory signal strength to all areas of the nation." [1] In view of this and of the fact that the applicant's proposal is to add a new service to a community already well supplied, it was held that the public interest, convenience and necessity would not be served by the grant of the application.

On June 8, 1962, the Commission substantially adopted the examiner's initial decision and denied the application. Rounsaville of Louisville appeals.

In a pre-hearing stipulation in this court, the parties agreed that these issues are presented to us:

"1. Whether upon the facts of this case, the Federal Communications Commission improperly applied § 3.182(o) of the Federal Communications Commission's Rules and Regulations in determining whether the subject application of Rounsaville of Louisville, Inc., would cause objectionable nighttime interference to Radio Station WEZY.

"2. Whether the Commission's decision in denying the application of Rounsaville of Louisville, Inc., to extend the facilities of Radio Station WLOU, so as to include nighttime operation, was arbitrary, capricious and contrary to the public interest."

Section 3.182(o) of the Commission's Rules, 47 C.F.R. § 3.182(o), is rather lengthy and highly technical. The following subsections are particularly involved here:

"(1) With respect to the root-sum-square values of interfering field intensities referred to in this section, except in the case of Class IV stations on local channels, calculation is accomplished by considering the signals in order of decreasing magnitude, adding the squares of the values and extracting the square root of the sum, excluding those signals which are less than 50% of the RSS value of the higher signals already included.

"(2) The RSS value will not be considered to be increased when a new interfering signal is added which is less than 50% of the RSS value of the interference from existing stations, and which at the same time is not greater than the smallest signal included in the RSS value of interference from existing stations.

"(3) It is recognized that application of the above '50% exclusion'

---

1. Paragraph eleven of the conclusions of the examiner's initial decision.

method of calculating the RSS interference may result in some cases in anomalies where the addition of a new interfering signal or the increase in value of an existing interfering signal will cause the exclusion of a previously included signal and may cause a decrease in the calculated RSS value of interference. In order to provide the Commission with more realistic information regarding gains and losses in service (as a basis for determination of the relative merits of a proposed operation) the following alternate method for calculating the proposed RSS values of interference will be employed wherever applicable.

"(4) In the cases where it is proposed to add a new interfering signal which is not less than 50% of the RSS value of interference from existing stations or which is greater than the smallest signal already included to obtain this RSS value, the RSS limitation after addition of the new signal shall be calculated without excluding any signal previously included. Similarly, in cases where it is proposed to increase the value of one of the existing interfering signals which has been included in the RSS value, the RSS limitation after the increase shall be calculated without excluding the interference from any source previously included.

"(5) If the new or increased signal proposed in such cases is ultimately authorized, the RSS values of interference to other stations affected will thereafter be calculated by the '50% exclusion' method without regard to this alternate method of calculation."

Rounsaville argues that subsection (5) negates the Commission's finding that its proposal would increase the nighttime RSS limitation of WEZY and so cause the latter to suffer objectionable interference. It says, in effect, that, in calculating the nighttime RSS limitation to WEZY if WLOU's proposal were authorized, the Commission should have used the 50% exclusion method provided by subsections (1) and (5). It also argues that in the circumstances the Commission should have waived subsection (4), as permitted by § 1.15 of its Rules.

In this case, the application of the 50% exclusion provision of subsection (1) in the calculation of objectionable interference would show that the addition of WLOU's new interfering signal would cause a decrease in the calculated RSS value of interference to WEZY. Obviously the addition of a new interfering signal cannot actually cause a decrease, as appellant's expert witness admitted when he said,

"Any time the signal is added on the channel irrespective of the method that the Commission uses for determining interference there would be more interference if you add more signal on any channel."

The possibility that the application of the 50% exclusion method of calculation might result in the anomaly which it produced here was recognized by the Commission in subsection (3), and it therefore there provided that, "In order to provide the Commission with more realistic information regarding gains and losses in service (as a basis for determination of the relative merits of a proposed operation)" in such a case, the alternative method of calculating the proposed RSS values of interference set forth in subsection (4) will be employed; that is, "the RSS limitation after addition of the new signal shall be calculated *without excluding any signal previously included.*" (Emphasis added.)

That is exactly what was done in this case. The theoretical calculation made under the 50% exclusion provision of subsection (1) having shown that the interference to WEZY *would be decreased* by the addition of WLOU's new interfering signal,—an admittedly anomalous result—the Commission calculated the RSS limitation after the addition of WLOU's new signal without the 50% ex-

clusion. This was in accordance with the requirement of subsection (3) that in a case such as this subsection (4), instead of subsection (1), be applied. These provisions simply recognize that theory cannot be allowed to prevail over an established and acknowledged fact.

The Commission then compared the advantages to WLOU's service area to be derived from the proposed operation with the disadvantages to be caused by it in the service area of WEZY and concluded that the former would not outweigh the latter, and that therefore the public interest would not be served by the grant of the application. Deciding where the public interest lies in such a situation is a primary duty of the Commission under the statute,[2] and under its Rule, § 3.24, 47 C.F.R. § 3.24 (Supp. 1962), which in part reads:

> "Broadcast facilities; showing required.—An authorization for a new standard broadcast station or increase in facilities of an existing station will be issued only after a satisfactory showing has been made in regard to the following, among others:
>
> "(a) That the proposed assignment will tend to effect a fair, efficient, and equitable distribution of radio service among the several states and communities.
>
> "(b) That objectionable interference will not be caused to existing stations or that, if interference will be caused, the need for the proposed service outweighs the need for the service which will be lost by reason of such interference. * * *"

The argument that subsection (5) "negates" the holding of the Commission in this case is refuted by the language of that subsection which applies only "[i]f the new or increased signal proposed in such cases is ultimately authorized." Only *thereafter* will the RSS value of interference to other stations be calculated by the 50% exclusion method, without regard to subsection (4). Subsection (6) of § 3.182 (o), referred to by the appellant, which contains examples of RSS interference calculations, does not militate against our conclusions.

As we said in Interstate Broadcasting Co., Inc. v. Federal Communications Comm'n,[3] " * * * [I]n this highly technical field the Commission's construction and application of its own Rules and Standards of Engineering Practice should be entitled to great weight."

The Commission's decision in this case, reached in the exercise of its expertise, was consistent with its Rules and was by no means arbitrary or capricious.

Affirmed.

2. Title 47, § 309(a), 66 Stat. 715 (1952).

3. 105 U.S.App.D.C. 224, 231, 265 F.2d 598, 605 (1959).